IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
WILLIAM SALAAM HALL EL,        )
Consul Pro Per, and            )
JASMINE HALL EL [Ex Rel        )
Jasmine Hall], In Propia       )
Persona Sui Heredes,           )
                               )
            Plaintiffs,        )
                               )
    v.                         )     1:12CV246
                               )
JESSICA CRAVEN (in Personem),  )
D.E. GRIFFITHS (in Personem),  )
POLLY D. SIZEMORE (in Personem),)
and GUILFORD COUNTY,           )
                               )
            Defendants.        )
```

## MEMORANDUM OPINION, ORDER AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court sua sponte. For the reasons that follow, the obligation of any Defendant to answer or otherwise to respond to the "Verified Complaint" (Docket Entry 1) is stayed and it is recommended that the Court dismiss this case for want of subject-matter jurisdiction or, alternatively, with prejudice.

BACKGROUND

On March 13, 2012, the Clerk's Office docketed a type-written document styled as a "Verified Complaint" bearing the caption set out above and the signature of Plaintiff William Salaam Hall El.

(See id. at 1, 12.)[1]  Said document, both as a whole and in most of its individual parts, is incomprehensible.  (See id. at 1-13.)  The nonsensical nature of the "Verified Complaint" immediately becomes apparent in its initial paragraphs, which identify "Plaintiffs [as] internationally protected persons pursuant to Title 18 U.S.C. § 112, Ipso Jure Moorish Nationals and lawful inhabitants of the State of North Carolina . . . [who] are not now and have never been United States citizens under the Fourteenth Amendment of the *ens legis* Constitution for the corporate UNITED STATES, notwithstanding any failures to properly pass the said amendment into law."  (Id. at 1 (capitalization and italics in original).)

Further, although the "Verified Complaint" references some recognizable provisions of law, it fails to give any understandable basis for any discernible legal claim.  (See id. at 1-13.)  For example, beside its caption, the "Verified Complaint" contains the words "FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION"(id. at 1), which one might perceive as an attempt to assert a due process-based cause of action; however, the introductory paragraphs of the "Verified Complaint" quickly dispel any notion that said filing constitutes a legitimate pleading by nonsensically asserting that:

---

[1] The "Verified Complaint" does not identify Plaintiff William Salaam Hall El as a member of the North Carolina State Bar.  (See Docket Entry 1.)  Moreover, a search of the North Carolina State Bar's online directory showed no record of any variation of the name "William Salaam Hall El."  See http://www.ncbar.com/members/member_directory.asp (last visited Mar. 29, 2012).

-2-

Case 1:12-cv-00246-UA-LPA   Document 6   Filed 03/30/12   Page 2 of 18

1) "Defendants are accused of denying due process of law in violation of" various federal criminal statutes (id. at 1-2 (citing 18 U.S.C. §§ 241, 242, 1581, and 2332b));

2) "Defendants arbitrarily denied [P]laintiffs' evidentiary matters of record up to and including the denial and change of 'nolo contendere plea' a/k/a 'Alford plea' entered by Consul of record to the unlawful filing of a 'motion for continuance' without consent of Plaintiff" (id. at 2); and

3) "Defendants have descended to the status of mere private citizens due to their fraudulent use of commercial paper and securities" (id.).

Next, under the heading "JURISDICTION," the "Verified Complaint" absurdly alleges that:

> Jurisdiction of this court is invoked under The Divine Constitution and Bylaws of Moorish America via El Hajj Sharif Abdul Ali with full authority from H.R.H. King Abdul Aziz Ibn Abdul Rahman Ibn Faisal Al Saud; Treaty of Marrakesh – Library of Congress, Washington, District of Columbia, United States Constitution / Law of Nations and supreme laws and statutes of the Unites [sic] States Republic . . . .

(Id.) It then lists a treaty between the United States and Morocco, legislative and administrative materials from the United States government and the State of Illinois, "The Northwest Ordinance," an Illinois statute, two "Executive Orders," a United Nations declaration, and the North Carolina Constitution. (Id. at 2-3.) The "Verified Complaint" thereafter purports to quote

-3-

various treaty and federal constitutional provisions, as well as state and federal judicial decisions, in a manner that defies understanding. (Id. at 3-4.)

Nor do the allegations appearing under the heading "NATURE OF ACTION" articulate any coherent claim(s). (See id. at 4-6.) To the contrary, as support for the conclusory contention that "Defendants have committed and conspired to commit criminal, unconstitutional and ultra vires acts in unlawfully denying [P]laintiff to be heard at law" (id. at 4), that portion of the "Verified Complaint" implausibly states that:

1) "[o]n December 12, 2011 Defendant D.E. Griffiths remitted an unlawful bill of attainder to Plaintiff Jasmine Hall El without proper delegation of authority order against the state constitution of North Carolina" (id. at 5);

2) "Defendant D.E. Griffiths is a private corporate policy [sic] officer for High Point Policy [sic]" (id.);

3) "[o]n February 27, 2012 at the hearing for said bill of attainder, Defendant Jessica Cravens acted unlawfully and without license in making legal determinations, entering a 'guilty plea without Plaintiffs' consent . . . [and] ignor[ing] an affidavit of specific power of attorney which was a part of the record" (id.);

4) "[p]residing court administrator POLLY D. SIZEMORE ('Defendant') threatened Plaintiff William Salaam Hall El with kidnapping without proper delegation of authority or established

-4-

personem jurisdiction under force of arms . . . [which] included 12 European High Point private security policy [sic] officers seated in the jury box, 3 Negroid sheriff's deputies and 6 European sheriff's deputies" (id.);

5) "[s]aid terroristic threats from presiding court administrator POLLY D. SIZEMORE caused Plaintiff's Consul of record to vacate the courtroom derogating her defenses at law . . . [and] prevent[ing] the administration of Plaintiff's main defense being the prosecution's lack of satisfactory proof of 'corpus delicti'" (id.); and

6) "[a]fter Plaintiff William Salaam Hall El attempted to enter a nolo contendere for his wife with her full consent, he was threatened by force of arms and coerced to evacuate the courtroom to avoid being kidnapped by the sheriff's deputies" (id. at 6).

From that point, the "Verified Complaint" launches into an extended exegesis (purportedly divined from a myriad of sources, including the "Treaty of Peace and Friendship (1786 A.D./1836 A.D.) between Morocco and the United States," federal criminal and immigration statutes, North Carolina's Constitution and statutory code, state and federal decisional law, the "Instructions for the Government of Armies of the United States in the Field (Lieber Code)," legal dictionaries, and the Bible) that supposedly supports Plaintiffs' claims, but that, in reality, represents only ridiculous ramblings. (Id. at 6-10.)

-5-

Finally, under the heading "ALTERNATE RELIEF," the "Verified Complaint" outlandishly demands:

1) "[e]nforcement of the . . . Divine Constitution and By-Laws of El Hajj Sharif Abdul Ali, Rex," as well as provisions of the North Carolina Constitution, the United States Constitution, "The Treaty of Marrakesh of 1786/1836," and "Judgment 27 August 1952 International Court of Justice" (id. at 11);

2) "peaceable possession of Monetary counterclaims due for these abuses of the color-of-law authority committed by [Defendants]" (id.);

3) "that criminal charges be found, and that they be placed upon the Defendants" (id.);

4) that "this United States District Court view [Plaintiffs] as Ipso Jure Moors ennobled (Natural Born Beneficiaries of the Land) and not as (brands) NEGROES, BLACKS (persons), COLOREDS, AFRICAN-AMERICANS, or any other improper person or 'nom de guerre', imposed upon them by [D]efendants for misrepresentation 'Actions' or other acts of 'Misprision' that a misdirected society may 'believe' to be true" (id.);

5) that this Court "order[] all Defendants to be brought before the Law to answer for their criminal and unjust actions" (id.);

6) that "[a]ll Agents, State, County Officials, Federal Officials, and Contractors . . . be informed of the Law of the Land

-6-

(Constitution) and their obligation to uphold the same and to no longer be excused without action on the part of the Sheriff (Constitutional Officer) for violating the same" (id. at 11-12);

7) "Defendants in personem be found guilty in violation [sic] United States Republic Constitution, the North Carolina state Constitution, United States Code(s) of Law . . . [and] immediate[ly] recus[ed] of any offices of trust with the Guilford County government or Guilford County General Court of Justice" (id. at 12);

8) "$525,000.00 for compensatory damages and $250,000 for punitive damages" each from Defendant Cravens, Defendant Griffiths, and Defendant Guilford County (id.); and

9) "a written apology" (id.).

The attachments to the "Verified Complaint," which include numerous pages of apparent Arabic writing (Docket Entry 1-1 at 1-26), a treaty (id. at 29-34), and a 1933 post-bill regarding the surrender of gold coins, bullion, and certificates to the Federal Reserve (Docket Entry 1-3 at 5), add nothing that would suggest the conceivable existence of any viable claim; however, some of the appended materials do reveal some significant things about the events underlying the "Verified Complaint." First, an attached "North Carolina Uniform Citation" (Docket Entry 1-3 at 3), reflects that, on December 12, 2011, "Jasmine Clark Hall" (with the same address listed in the "Verified Complaint" for Plaintiffs William

Salaam Hall El and Jasmine Hall El (compare id., with Docket Entry 1 at 12)) received "Citation No. 831688E" from Defendant Griffiths, an officer with the High Point Police Department, for violating North Carolina law by "operat[ing] a motor vehicle on a street or highway at a speed of 49 MPH in a 25 MPH school zone during posted hours while school was in session." (Docket Entry 1-3 at 3.)[2] Said citation provided an appearance date of January 18, 2012, at the state district court in High Point. (See id.)

Additional attachments include:

1) a document dated January 18, 2012, bearing the title "Specific Power of Attorney," stating that "Jasmine Clark Hall . . . grant[s] a limited and specific power of attorney to William Salaam Hall El . . . to undertake and perform only the following acts on [her] behalf: 1. appear for citation # 831688E[;] 2. settle and close the matter" (Docket Entry 1-2 at 1);

2) a notice from the State of North Carolina, Guilford County, District Court Division, dated February 27, 2012, continuing Plaintiff Jasmine Hall El's "SPEEDING IN SCHOOL ZONE 049/25" case to April 5, 2012 (Docket Entry 1-3 at 4);

3) a "Complaint and Motion for Domestic Violence Protective Order" stamp-filed on February 27, 2012, in the District Court Division of the North Carolina General Court of Justice in Guilford

---

[2] For ease of reading, standard capitalization conventions are used here instead of the all-capitals style of the citation.

County, which lists Plaintiff William Salaam Hall El as the plaintiff and Defendant Griffiths as the defendant and which alleges that Defendant Griffiths "caused injury to" Plaintiff Jasmine Clark Hall El "due to violations of Article I § 16 and the issuance of citation no. 831688E[,] . . . a bill of attainder" (Docket Entry 1-3 at 6);[3] and

4) a document titled "Affidavit & Notice of Dispute, Cancellation, & Discharge of Debt Claim & Color of Authority Actions," dated as signed by Plaintiff William Salaam Hall El on March 12, 2012, referencing, inter alia, "Guilford County D.A. Jessica Craven" and "Guilford Co. presiding judge Polly D. Sizemore," asserting that "Jasmine Hall El may enter into contracts, sue and be sued under any name that [she] choose[s] at will, including [her] Moorish Free National Name and noble title 'El,'" claiming "that the tickets issued by municipality of High Point are negotiable instruments . . . and that the creditor is attempting to collect from [her] . . . in violation of Uniform Commercial code," threatening that "[a]ll Judges, Trustees,

---

[3] As relief, said complaint demanded, inter alia, possession of "[a]ll vessels, real estate[,] motor vehicles, motor cycles, boats, etc. belonging to Defendant [Griffiths] in accordance with Amendment XIII sec. 12," "payments for [Plaintiff William Salaam Hall El's] support as required by law," and, "[i]n accordance with the 13th Amendment section 12, [a declaration that] Defendant D.E. Griffiths has forfeited his rights to all of his property due to his negligent acts of inducing [Plaintiff Jasmine Hall El] to slavery, involuntary servitude and violations of Title 18 codes aforementioned."  (Docket Entry 1-3 at 8.)

-9-

Administrative Clerks, [and] Court Clerks violating [her] treaty Rights, Contractual or constitutionally protected Rights, and or litigating on behalf of the Prosecution will be reported to The Judicial review Board of the State, The Bar Association, Internal Revenue Service Audit Unit, . . . and the Supreme Court," and demanding "[a]ll ticket(s) dismissed and alleged debt cancelled," "[a]ll records of this Lawsuit/Citation deleted from [her] file," and "the $25,000.00 USD counterclaim of record from D.E. Griffiths" (Docket Entry 1-3 at 1-2 (capitalization as in original)).[4]

Because the Clerk's Office received payment of the required $350 filing fee at the time of the submission of the "Verified Complaint" (see text accompanying Docket Entry 1), the Clerk's Office issued summonses for Defendants (see Docket Entry 3), one of which Plaintiff William Salaam Hall El has returned executed as to Defendant Sizemore (see Docket Entry 5).

## DISCUSSION

"The inherent authority of the district court to dismiss a case *sua sponte* and control its docket is well established." Moser v. Universal Eng'g Corp., 11 F.3d 720, 723 (7th Cir. 1993) (italics in original); see also Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991) ("[I]nherent powers must be exercised with restraint and

---

[4] Said "affidavit" bears a caption as if intended for filing in the state district court, but lacks any sign of actual filing or service upon any person or entity. (See Docket Entry 1-3 at 1-2.)

-10-

discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. . . . [O]utright dismissal of a lawsuit . . . is a severe sanction, yet is within the court's discretion." (internal citations omitted)). "This power derives from the need for courts 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases,' and extends beyond the powers enumerated in the Federal Rules of Civil Procedure." Id. (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1961)).

Such "inherent authority" includes the power to "dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee . . . ." Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000) (italics in original); accord, e.g., Williams v. Madden, 9 Fed. Appx. 996, 997 n.1 (10th Cir. 2001); Brown v. Maynard, No. L-11-619, 2011 WL 883917, at *1 (D. Md. Mar. 11, 2011) (unpublished). Indeed, "[o]ver the years [the Supreme] Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion." Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (internal citations and quotation marks omitted). In other words, "where a claim is obviously without merit, Hagans precludes
-11-

a federal district court from exercising its jurisdiction." Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); accord Davis v. Pak, 856 F.2d 648, 651 (4th Cir. 1988) ("Hagans stands for the proposition that federal courts are without jurisdiction to hear frivolous constitutional claims.").

In this case, the "Verified Complaint" contains "allegations [of] the type that have been described by other courts as 'gibberish.'" Cannon v. State Workers, No. 2:08-3447-HMH-RSC, 2008 WL 4960234, at *2 (D.S.C. Nov. 20, 2008) (unpublished). "As a result, it is clear that this Court lacks jurisdiction over [these] allegations or attempted claims . . . because they are wholly insubstantial, unintelligible, and frivolous." Id.; see also Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) ("Twelve pages of gibberish is no better than 240, so it may be appropriate to dismiss a short complaint under [Federal] Rule [of Civil Procedure] 8 because it is not 'plain.'").

Further, to the extent any reasonable person could construe the "Verified Complaint" as setting forth any identifiable claim, the allegations therein and the attachments thereto show that such a claim arises from and amidst the following historical backdrop:

1) in December 2011, a law enforcement officer cited Plaintiff Jasmine Hall El for speeding nearly twice the legal limit in a school zone during school hours;

-12-

2) on the date of her first court appearance in state court for that citation in January 2012, Plaintiff Jasmine Hall El executed a power of attorney form designed to authorize her non-attorney husband, Plaintiff William Salaam Hall El, to appear for her in state court in connection with that citation;

3) Plaintiff Jasmine Hall El's speeding-in-a-school-zone case did not go forward in state court on that date, but the case did come back on for hearing in February 2012, before Defendant Sizemore (and with Defendant Craven participating in some fashion on behalf of the local district attorney's office), at which time Defendant Sizemore refused to allow Plaintiff William Salaam Hall El to appear for Plaintiff Jasmine Hall El; and

4) on that same date in February 2012, the state court continued Plaintiff Jasmine Hall El's speeding-in-a-school-zone case until April 2012, and Plaintiff William Salaam Hall El filed a facially-frivolous domestic violence protection complaint against Defendant Griffiths in state court on the ground that his citation to Plaintiff Jasmine Hall El constituted a bill of attainder.

Any and all claims in the "Verified Complaint" thus fail as frivolous for at least the following reasons:

1) a traffic citation for speeding in a school zone in violation of North Carolina law (as to which one then has a right to appear in court) does <u>not</u> qualify as an unlawful bill of attainder, <u>see, e.g.,</u> <u>Lynn v. West</u>, 134 F.3d 582, 594 n. 11 (4th

-13-

Cir. 1998) ("A legislative act is an unconstitutional bill of attainder if it singles out an individual or narrow class of persons for punishment without a judicial proceeding.");

2) Plaintiff Jasmine Hall El did <u>not</u> have a guilty plea to any such speeding-in-a-school-zone charge entered without her consent (nor did she suffer derogation of any defenses) at the hearing in February 2012, as the state court continued her case to April 2012;

3) prosecutorial officials "have absolute immunity for their participation in the judicial process," <u>Pierce El-Bey v. Fletcher</u>, No. 1:11CV901, 2012 WL 375233, at *2 (M.D.N.C. Feb. 3, 2012) (unpublished) (citing <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259 (1993));

4) as a lay-person, Plaintiff William Salaam Hall El had no federally-protected right to appear in state court for Plaintiff Jasmine Hall El, regardless of any power of attorney she signed;[5]

5) a judge has a duty to control her courtroom, including (if necessary) by invoking the assistance of law enforcement officers to enforce her directives (such as a prohibition against a non-attorney appearing for a defendant charged with a traffic

---

[5] Indeed, he cannot even litigate this case in this Court on her behalf. <u>See, e.g.</u>, <u>Myers v. Loudoun Cnty. Pub. Sch.</u>, 418 F.3d 395, 400 (4th Cir. 2005) ("An individual unquestionably has the right to litigate his own claims in federal court. . . . The right to litigate for oneself, however, does not create a coordinate right to litigate for others.").

-14-

offense), and enjoys absolute immunity for actions taken in that regard, see id. (citing Stump v. Sparkman, 435 U.S. 349 (1978));

6) the "Verified Complaint" contains no allegations that Guilford County took or failed to take any actions;[6] and

7) the non-monetary relief requested in the "Verified Complaint" far outstrips the facts of the case (not to mention the bounds of reason), see generally id. at *3 (denying demand for declarations regarding rights of "Moors" as "impermissibly broad").

Moreover, the content of the "Verified Complaint" and its attachments reveals that the instant action represents part of a malicious scheme by Plaintiffs to impede the efficient operation of the state court system through the institution of improper and vexatious litigation intended to retaliate against public officials for performing their required duties. This Court should not countenance such abuse of the judicial process and should refuse to

---

[6] In North Carolina, "district attorneys and their assistants are state [not county] officials," Mathis v. Town of Waynesville, No. 1:09CV296, 2009 WL 6067335, at *8 (W.D.N.C. Dec. 4, 2009) (unpublished), recommendation adopted, 2010 WL 1052331 (W.D.N.C. Mar. 19, 2010) (unpublished). Similarly, judges in the State of North Carolina fall under the auspices of the State not the counties within the State. See Everson v. Doughton, No. 1:08CV887, 2009 WL 903316, at *2 (M.D.N.C. Apr. 2, 2009) (unpublished), recommendation adopted, slip op. (M.D.N.C. July 15, 2009), aff'd, 366 Fed. Appx. 461 (4th Cir. 2010). Finally, in North Carolina, counties (like Guilford County) and cities (like the City of High Point) constitute separate political subdivisions, see Davidson Cnty. v. City of High Point, 321 N.C. 252, 257, 362 S.E.2d 553, 557 (1987), such that Guilford County has no authority over an employee of the City of High Point (like Defendant Griffiths).

-15-

allow litigants to misuse federal court processes to interfere unjustly with legitimate state court matters.

Finally, the fact that Plaintiffs' aforementioned artifice relies on the uniformly discredited and utterly baseless notion that they have special status stemming from their association with a "Moorish" group only bolsters the case for dismissal sua sponte. Indeed, this Court, per United States District Judge Thomas D. Schroeder, has aptly characterized proponents of such views as "scofflaws and ne'er-do-wells who attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws." United States v. $7,000.00 in U.S. Currency, 583 F. Supp. 2d 725, 732 (M.D.N.C. 2008); accord, e.g., Muhammad El-Bey v. North Carolina, No. 5:11CV423FL, 2012 WL 368374, at *2 (E.D.N.C. Jan. 9, 2012) (unpublished) ("[A]ny claim based on the contention that Plaintiffs are not subject to the laws of North Carolina because of their alleged Moorish nationality and the Treaty of Peace and Friendship of 1787 is frivolous."), recommendation adopted, 2012 WL 368369 (E.D.N.C. Feb. 3, 2012) (unpublished); Pierce El-Bey v. City of Charlotte, No. 3:11CV131RJC-DCK, 2011 WL 4757653, at *5-7 (W.D.N.C. May 17, 2011) (unpublished) (rejecting claims arising from traffic stop where plaintiff asserted rights to relief under treaties, United Nations declarations, and federal constitutional and statutory provisions,

-16-

Case 1:12-cv-00246-UA-LPA   Document 6   Filed 03/30/12   Page 16 of 18

based on "Moorish" heritage), recommendation adopted, 2011 WL 4755560 (W.D.N.C. Oct. 7, 2011) (unpublished), aff'd sub nom., Fontaine v. City of Charlotte, ___ Fed. Appx. ___, 2012 WL 432889 (4th Cir. Feb. 13, 2012) (unpublished).

## CONCLUSION

This Court has inherent authority to dismiss the "Verified Complaint" sua sponte because of its patent frivolity. In fact, the frivolous nature of the "Verified Complaint" rises to such a level as to warrant either a dismissal for lack of subject-matter jurisdiction or with prejudice. Moreover, because the content of the "Verified Complaint" and its attachments unmistakably reveals that Plaintiffs filed said pleading in a bad faith attempt to enlist this Court in their resistance to the lawful operation of the state court system, this Court should exercise its discretion to effect such dismissal without refunding the filing fee.

**IT IS THEREFORE ORDERED** that the obligation of any Defendant to answer or otherwise to respond to the "Verified Complaint" is stayed until otherwise ordered by this Court.

**IT IS RECOMMENDED** that, due to its frivolousness, this action be **DISMISSED FOR WANT OF SUBJECT-MATTER JURISDICTION** or, in the alternative, be **DISMISSED WITH PREJUDICE**, in either case without return of the filing fee.

This the ___30th___ day of March, 2012.

                                    ___/s/ L. Patrick Auld___
                                        **L. Patrick Auld**
                                  **United States Magistrate Judge**